**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

JERRY SHARPE-MILLER,

        Plaintiff,

    vs.                                               2:22-cv-00406-KWR-GJF

WALMART, INC.,
_ET AL_.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed on October 13, 2023.  Doc. 57.  Having reviewed the parties' pleadings and applicable law, the Court finds that Defendant's motion is well taken and therefore, **GRANTED**.

### BACKGROUND

This case is an employment discrimination dispute arising out of Plaintiff's employment with Defendant, Walmart, Inc. ("Walmart").  Plaintiff was employed by Walmart from April 2017 until his resignation on April 30, 2021.  _See_ Doc. 57, Ex. B at 26, 99.  Following his resignation, Plaintiff sued Defendant in state court on April 26, 2022, alleging claims of sex discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981, the Fourteenth Amendment of the U.S. Constitution, Article II, § 18 of the New Mexico Constitution, the New Mexico Human Rights Act, and Title VII of the Civil Rights Act of 1964.  _See_ Doc. 1.  Walmart removed this case to this Court.  _Id_.

### FACTS[1]

---

[1] The Court has determined the relevant facts based on the parties' submissions, while omitting extraneous detail, party arguments, and facts not supported by the record.  Disputes concerning the facts are noted.

In April 2017, Walmart hired Plaintiff as a stocker/unloader of the Cap 2 team for Store 611 in Roswell, New Mexico. **Undisputed Material Fact ("UMF") 3**. Plaintiff remained employed with Walmart until his resignation on April 16, 2021. Ex. B at 98. Plaintiff identifies as homosexual. **UMF 2**. Upon accepting the job, Plaintiff attended a week-long orientation where he received and reviewed Walmart's employment handbook, policies, regulations, and ethics. **UMF 4**. During his employment with Walmart, Plaintiff held several positions. **UMF 6**. In his first year with Walmart, Plaintiff worked as an unloader/stocker and after two years, received a promotion and transferred to Cap 1. **UMF 7**. As a member of Cap 1, Plaintiff unloaded dairy trucks and frozen food, as well as overstock. **UMF 8**. Plaintiff voluntarily made these interdepartmental moves because of his desire to learn as much as possible before accepting a managerial position, Plaintiff's career goal. **UMF 9**. Plaintiff temporarily relocated to Carlsbad, New Mexico in 2019 as a food sales associate. **UMF 10**. While working at the Carlsbad store, Plaintiff was offered a grocery assistant store manager position, which he declined. **UMF 11**. Plaintiff returned to the Roswell store. *Id*. After a few months, management encouraged Plaintiff to apply for the Cap 2 supervisor position. **UMF 12**. Management believed Plaintiff would be a good fit for the position due to his experience and work ethic. *Id*. Plaintiff was promoted to the Cap 2 position.

During his training as a supervisor, Plaintiff was trained on the proper procedures of handling complaints made by other Walmart associates, how to report complaints to the ethics hotline, the procedure as to how to respond to complaints about him, and other managerial skills. **UMF 14**. (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 74)). Plaintiff also received additional training on Walmart's discrimination, retaliation, and sexual harassment policies. **UMF 15**.

In 2019, Plaintiff was demoted from his Cap 2 supervisor position to online grocery pickup because the market manager believed his performance as supervisor was unsatisfactory and deficient. **UMF 16**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 87-90)).  Specifically, at the time of his demotion, the market manager was dissatisfied with Plaintiff's way of managing a claims issue that had occurred during Plaintiff's shift.  **UMF 17**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 87-90)).  "Claims" is the name Walmart assigns to damaged or defective products.  **UMF 18**.  Assistant managers or supervisors are required to handle claims issues.  *Id*.  As part of the claims process, a supervisor or assistant manager must clean up shattered glass or spilled liquid immediately to prevent accidents. **UMF 19**.  Once cleaned up, the assistant manager or supervisor must bring the collected glass and/or liquid to the claims cage to complete a claims department form to process a claim for store credit.  *Id*. During his time as supervisor, Plaintiff encountered a claims issue which he failed to correctly manage. **UMF 20**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 91-95)).  Plaintiff failed to adequately follow proper protocol because when a spill occurred, he cleaned up the liquid but never placed the materials in the claims cage as required.  **UMF 21**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 94)).  The market manager became aware of Plaintiff's failure to follow proper protocol during this specific incident, which led to Plaintiff's demotion.  **UMF 22**.  Because of Plaintiff's demotion, his pay decreased from $15.00 to $13.50 per hour.  **UMF 23**.  Plaintiff continued to work at Walmart following the demotion for another two years.  **UMF 24**.  Plaintiff did not discuss his demotion with Supervisors Rocha, Carrera, Melendez, or Hernandez, or any other supervisor at Walmart.  **UMF 25**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 87)).

Plaintiff claims this demotion occurred under threat of termination.  Doc. 20 at 5.   Plaintiff then alleges that he was subsequently placed under investigation for sexual harassment, which Defendant has refused to furnish proof of.  *Id*.

Walmart asserts it does not unlawfully discriminate.  Walmart adheres to a Discrimination and Harassment Prevention Policy.  **UMF 27**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 220)).  Walmart's Discrimination and Harassment Prevention Policy prohibits harassment and discrimination by or directed at any Walmart associate.  **UMF 28**.  This specific corporate policy further prohibits retaliation against individuals for making internal or external complaints of harassment or discrimination.  *Id*.  Walmart asserts it is committed to preventing discrimination and harassment in all aspects of its business and encourages associates who experience, observe, or are aware of any conduct that may violate this policy to report it immediately to management or anonymously through a Global Ethics Hotline.  Walmart argues it takes appropriate steps to ensure there is no retaliation of any kind for using the reporting procedures described in this policy and prohibits such retaliation.

Walmart has an attendance policy structured as a points-based system.  **UMFs 31 and 32**.  Associates receive points for every occurrence they are late, absent, or absent without prior notice.  *Id*.  For example, if a Walmart associate fails to report to work and does not call a corporate number to notify in advance of an absence, that associate receives three points – two points for not calling in advance to explain an absence and one for an absence.  **UMF 33**.  If an associate accumulates five points, he or she is subject to disciplinary action, including termination.  *Id*.  Management tracks associate points accumulation through an online system.  *Id*.  When an associate reaches five points, management meets with the employee to address the issue.  *Id*.

Plaintiff testified that despite his knowledge of Walmart's policies and the training he received, he struggled with attendance.  **UMF 34**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 153, 212)).  By April 2021, Plaintiff had accumulated five points due to his tardiness and/or absences from work.  **UMF 35**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Def. Ex. D at 15)).  Once reaching the five-point threshold, Plaintiff had another absence from work.  **UMF 36**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 102, 216, Ex. D at 15)).  When Plaintiff returned to work, he was told he had been terminated.  **UMF 37**.  Plaintiff immediately challenged his termination with Manager Enoc Herrera, furnishing proof of jury duty attendance.  *Id*.  Manager Herrera immediately reinstated Plaintiff.  **UMF 38**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 103)).  That same day, Walmart management realized Plaintiff was not in the computer system, but Timothy Rocha, People Lead, resolved the issue and placed Plaintiff back in the system the next day.  **UMF 39**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 103)).  Rocha subsequently apologized for the inconvenience it created, and Plaintiff was compensated for the time worked.  **UMFs 40 and 41**.

Plaintiff submitted his resignation on April 16, 2021.  **UMF 42**.  Plaintiff's resignation letter stated:

> To whom it may concern: Please accept this letter as my notice of resignation from Walmart effective 4/16/2021 to 4/30/2021.  The memories and lessons I have made and learned during my employment here will truly be memorable.  I hope a two-week notice is sufficient for you to find a replacement for me.  If I can help to train my replacement or tie up any loose ends, please let me know.  Thank you very much for the opportunity to work here.  Sincerely, Jerry Sharpe-Miller, Walmart Associate for Online Grocery Pick-up.

**UMF 44**.  Plaintiff testified at his deposition he hand delivered his resignation letter to Rocha, who had Plaintiff sign off.  **UMF 45**.  After the submission of his resignation letter, Plaintiff worked at the store until April 30, 2021.  **UMF 46**.  Prior to his resignation, Plaintiff at no point complained of sexual

orientation discrimination, retaliation, or any other unlawful conduct.  **UMF 47**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 104, 204, 221, 223)).  Nor did Plaintiff include such complaints in his resignation letter.  *Id*.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 101, 104, 204, 221, 223)).  Following his resignation, Plaintiff filed an EEOC charge alleging sexual orientation discrimination and retaliation.  **UMF 48**.

Plaintiff testified that during his four-year tenure at Walmart, associates made discriminatory comments about his sexual orientation in several incidents.  **UMF 49**.  Plaintiff admits that in two of these alleged incidents, the comments were not directed at him.  *Id*.  Plaintiff alleges these comments from coworkers created a hostile work environment.  **UMF 50**.  According to Plaintiff, an unknown individual called him "Jerry the Fairy" and claims he overheard others use the words "faggot" and "butt pirate."  **UMF 51**.  On another occasion, Plaintiff was asked if he was "afraid to break a nail" while disassembling a merchandise pallet.  *Id*.  Another coworker told Plaintiff told he walked like a cat.  *Id*.  Plaintiff alleges another coworker compared homosexuality to pedophilia and bestiality.  Doc. 20 at 3.  Lastly, Plaintiff alleges his vacation requests were routinely denied and that he was subject to a sexual harassment investigation because of his sexual orientation.  *Id*. at 6.  Plaintiff never confronted or reported any of the individuals he alleges made the derogatory remarks.  **UMF 52**.  (Plaintiff did not genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 101, 104, 204, 221, 223)).

In Plaintiff's Amended Complaint, he claims he resigned because he had had enough working for an unresponsive company to his complaints of a hostile work environment.  Plaintiff admitted in his deposition that he never complained or reported any alleged derogatory comments or hostile work environment claims to a Walmart manager or supervisor.  **UMF 53**.  (Plaintiff did not genuinely dispute

Defendant's asserted fact with citation to the record (Ex. B at 101, 104, 204, 221, 223)).  Plaintiff alleges

he never complained because of rumors of retaliation at his place of employment.  Doc. 20 at 4.

Plaintiff brought up the incidents at issue only after his resignation.  **UMF 55**.  (Plaintiff did not

genuinely dispute Defendant's asserted fact with citation to the record (Ex. B at 101, 104, 204, 221,

223)).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is

material if it could have an effect on the outcome of the suit.  *See Smothers v. Solvay Chemicals, Inc.*,

740 F.3d 530, 538 (10th Cir. 2014).  "A dispute over a material fact is genuine if a rational jury could

find in favor of the nonmoving party on the evidence presented."  *Id*.  (quoting *Tabor v. Hilti, Inc.*, 703

F.3d 1206, 1215 (10th Cir. 2013)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  *See Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the

moving party meets its initial burden, the non-movant cannot "rest on the pleadings[,] but must set forth

specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim."

*See Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  "[A] complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial," and the moving party will be entitled to judgment as a matter of law.  *See Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).

On summary judgment, a court is to view the facts in the light most favorable to the non-moving

party and draw all reasonable inferences in favor of that party.  *See Shero v. City of Grove*, 510 F.3d

1196, 1200 (10th Cir. 2007).  A court cannot weigh the evidence and determine the truth of the matter,

but instead, must determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## DISCUSSION

Plaintiff alleges that under 42 U.S.C. § 1981, the Fourteenth Amendment, Article II, Section 18 of the New Mexico Constitution, the New Mexico Human Rights Act, and Title VII of the Civil Rights Act of 1964, while employed by Walmart, he has claims of discrimination on the basis of sexual orientation, a hostile work environment, and retaliation.  Plaintiff asserts that Defendant's motion for summary judgment should be denied because there are numerous, genuinely disputed material facts. Defendant asserts there is no genuine dispute of material fact, and Plaintiff has failed to establish prima facie cases of sex orientation discrimination, a hostile work environment, and retaliation.  Therefore, Defendant asserts it is entitled to summary judgment in its favor on all claims.  The Court agrees with Defendant and concludes that summary judgment in its favor is appropriate.

## I.     Claims Under Title 42 U.S.C. § 1981 and the Fourteenth Amendment of the U.S. Constitution

Plaintiff alleges discrimination on the basis of his sexual orientation claiming that his employer "disparaged Plaintiff on multiple occasions…imposed upon him heightened and different scheduling standards, and subjected him to scrutinized treatment and baseless investigation, not required of other non-LGBTQ+ employees."  Doc. 1-2 at 13-14.  Plaintiff further alleges that Defendant retaliated against him by terminating him "suddenly, without notice, reprimand or warning, and without adequate, lawful cause, and because Plaintiff was attending mandatory jury duty."  *Id*.  Plaintiff alleges discrimination under both 42 U.S.C. § 1981 and the Fourteenth Amendment of the U.S. Constitution.

For a 42 U.S.C. § 1981 claim, a plaintiff must establish "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the

discrimination interfered with a protected activity as defined in § 1981." *Barfield v. Com. Bank*, N.A., 484 F.3d 1276, 1278 (10th Cir. 2007) citing*, Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir.2001).  § 1981 does not apply to religious or sex discrimination claims.  *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 970 (10th Cir. 1979) citing, *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415; *Doski v. M. Goldseker Co.*, 539 F.2d 1326 (4th Cir. 1976); *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975).

Here, Plaintiff does not allege racial discrimination nor does the record support a finding that he was discriminated against based on race.  Plaintiff's filings and testimony allege discrimination because of his sexual orientation, a form of sex discrimination.  *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020).  Plaintiff does not assert that he is a member of a recognized protected class under § 1981.  Nor has Plaintiff provided case law supporting the basis of a sex discrimination claim under § 1981.  Plaintiff has not established that Defendant had the intent to discriminate on the basis of race and that this discrimination interfered with a protected activity under § 1981.  Therefore, this Court finds there is no genuine dispute of material fact as to Plaintiff's § 1981 claim, and this claim fails as a matter of law.

Under the Fourteenth Amendment of the U.S. Constitution, Plaintiff alleges in Count IV that Defendant failed to instruct and train its employees as to federal and state requirements prohibiting discrimination on the basis of sex and sexual orientation.  This failure to instruct and train led to "deprivations of Plaintiff's guarantee of Equal Protection and right to contract for employment in the workplace."  Doc. 1-2 at 14.  Therefore, "Defendants failed to protect Plaintiff's constitutional right to equal protection, in the form of equal access to a non-hostile work environment free from discrimination, as guaranteed by the U.S. Constitution Amendment XIV, as applied to public

accommodations and private corporations acting as persons…and freedom to contract for employment free from discrimination." *Id*.

The Fourteenth Amendment's Equal Protection Clause states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "That language establishes an 'essential dichotomy' between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which 'however discriminatory or wrongful,' is not subject to the Fourteenth Amendment's prohibitions." *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) citing, *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir.1995) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)).

The Tenth Circuit has provided several tests to determine if challenged conduct constitutes state action. In some instances, courts apply the "symbiotic-relationship test, which asks if "the state has 'so far insinuated itself into a position of interdependence' with the private party that there is a 'symbiotic relationship' between them." *Id*. citing, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). In other cases, the Tenth Circuit has applied the nexus test, asking "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id*. at 387 citing, *Jackson*, 419 U.S. at 351, 95 S.Ct. 449. The Tenth Circuit has also applied a joint-action test, asking if the "private party is 'a willful participant in joint activity with the State or its agents.'" *Id*. citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). And in other cases, the Tenth Circuit has applied the public-function test, asking if a private entity exercises "powers traditionally reserved to the State." *Id*. citing, *Jackson*, 419 U.S. at 352. Ultimately, in applying each of these tests,

10

the crux of the issue is whether the deprivation of a federal right is attributable to a state.  *Id*. citing, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

Here, Plaintiff does not contend nor does the record support a finding that a state or its agents denied him equal protection of the law under the Fourteenth Amendment.  Plaintiff alleges that Defendant, a corporation, discriminated against him on the basis of his sexual orientation.  Plaintiff does not argue nor does the record support a finding that the State of New Mexico, the Federal Government, or any other state took action that discriminated against him.  Nor does Plaintiff allege Walmart or its employees are state actors.  In applying the several tests provided by the Tenth Circuit to determine if challenged conduct constitutes state action, this Court finds Plaintiff's employment discrimination claims under the Fourteenth Amendment fail in establishing state action.  Accordingly, this Court holds there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law.

## II.     Claims Under Article II, § 18 of the New Mexico Constitution

Plaintiff argues in Count I that Defendant "had a custom, policy, or practice of acting knowingly and with deliberate inference to Plaintiff's rights" under Article II, §18 of the New Mexico Constitution. Doc. 1-2 at 8.  Plaintiff claims Defendant acted with open hostility towards him because of his sexual orientation, which violated the Due Process Clause of the New Mexico Constitution.  *Id*.  Specifically, Plaintiff contends that Defendant created a hostile work environment because through the scope of its duties, other similarly situated employees were not subject to "disparaging comments on the basis of sexual orientation and gender identity, were not subjected to baseless sexual harassment investigations, and did not have their work and schedules scrutinized and directed by managers to an extreme and unreasonable degree."  *Id*. at 10.  Plaintiff then claims these unconstitutional practices led to lost wages, emotional distress, and lost quality of life.  *Id*.  Defendant argues that the New Mexico Constitution does not provide any greater protection than its federal constitutional counterpart.

Under Article II, § 18 of the New Mexico Constitution, "[n]o person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws.  Equality of rights under law shall not be denied on account of the sex of any person."  This text parallels language of the Fourteenth Amendment of the U.S. Constitution, which reads, "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV.  Ultimately, both textual sources prohibit arbitrarily the taking of property or a property right without due process, and there is not a structural difference between the two.  *Montoya ex rel. S.M. v. Espanola Pub. Sch. Dist. Bd. of Educ.*, 968 F. Supp. 2d 1117 (D.N.M. 2013).  A plaintiff's state constitutional claims "will be dismissed where [p]laintiffs do not withstand dismissal on their federal due process claims."  *Id*. at 1121.

Plaintiff does not contend that there is a reason warranting departure from federal precedent within this context.  *Id*. at 1120 citing, *ACLU of NM v. City of Albuquerque*, 139 N.M. 761, 770, 137 P.3d 1215 (Ct.App.2006).  Ultimately, "the burden is on the party seeking relief under the state constitution to provide reasons for interpreting the state provisions differently from the federal provisions when there is no established precedent.  *Id*.; *E. Spire Communications, Inc. v. Baca*, 269 F.Supp.2d 1310, 1324 (D.N.M.2003).

Plaintiff has not presented authority that due process as provided by the New Mexico Constitution differs in any way from the Fourteenth Amendment's due process clause.  Therefore, Plaintiff's claims must be analyzed under the federal standard.  *Christian Child Placement Serv. of New Mexico Christian Children's Home v. Vestal*, 125 N.M. 426, 430, 962 P.2d 1261, 1265 (Ct.App.1998).  "In order to prevail on either a substantive or procedural due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest."  *E. Spire Commc'ns, Inc.,* 269 F. Supp. 2d at 1324, aff'd sub nom. *E.SPIRE Commc'ns, Inc. v. New Mexico Pub.*

*Regul. Comm'n*, 392 F.3d 1204 (10th Cir. 2004) citing, *Hyde Park*, 226 F.3d at 1210 (citing *Weathers v. West Yuma County Sch. Dist.* R–J–1, 530 F.2d 1335, 1340–42 (10th Cir.1976)).

Here, as discussed in Section I, Plaintiff does not contend, and the record does not support a finding that the State of New Mexico or any other state actor discriminated against him. Plaintiff alleges that a corporation, Walmart, Inc., and its employees discriminated against him. Plaintiff has not established that the language of Article II, § 18 confers on him due process or equal protection rights permitting enforcement against private actors. Nor has Plaintiff provided case law supporting this contention that state action is not required for an actionable due process and equal protection claim. Therefore, Plaintiff's Article II, § 18 claim fails.

Even if Plaintiff established discrimination by a state actor, Plaintiff asserts no such protectable property interest nor a violation of that interest. In his Complaint, Plaintiff alleges Defendant unlawfully demoted and subsequently terminated him, treating him differently than other non-homosexual employees. The record does not support Plaintiff's claims. Plaintiff was demoted because he failed to adequately follow proper protocols related to product cleanup from a spilled item. UMF 21. Plaintiff failed to place the broken items in the claims cage as required – a breach of Walmart employee policy. *Id*. When the market manager became aware of this failure to follow protocol, Plaintiff was demoted. UMF 22. Plaintiff continued to work at Walmart for another two years following the demotion, and Plaintiff did not discuss this change with Walmart supervisors. UMF 25. The evidence presented does not support a finding that Plaintiff was unlawfully demoted because of his sexual orientation as he alleges. But rather, Plaintiff was demoted for his failure to follow Walmart policies.

Nor does the record support a finding that Plaintiff was terminated by Defendant because of his sexual orientation. Defendant initially terminated Plaintiff because, as Plaintiff himself admitted, he struggled with attendance at work. UMF 34. In April 2021, Plaintiff had accumulated five points due to

his tardiness and absences from work.  UMF 35.  Plaintiff had another subsequent absence for jury duty,

for which Defendant terminated him.  UMFs 36 and 37.  Defendant immediately reinstated Plaintiff

upon his furnishing proof of jury duty and received backpay.  UMFs 40 and 41.

Shortly thereafter, Plaintiff submitted his resignation on April 16, 2021.  UMF 42.  Plaintiff's

resignation letter stated:

> To whom it may concern: Please accept this letter as my notice of resignation from Walmart
> effective 4/16/2021 to 4/30/2021.  The memories and lessons I have made and learned during my
> employment here will truly be memorable.  I hope a two-week notice is sufficient for you to find
> a replacement for me.  If I can help to train my replacement or tie up any loose ends, please let
> me know.  Thank you very much for the opportunity to work here.  Sincerely, Jerry Sharpe-
> Miller, Walmart Associate for Online Grocery Pick-up.

UMF 44.  After the submission of his resignation letter, Plaintiff worked at the store until April 30,

2021.  UMF 46.  Prior to his resignation, Plaintiff at no point complained of sexual orientation

discrimination, retaliation, or any other unlawful conduct.  UMF 47.  Nor did Plaintiff include such

complaints in his resignation letter.  *Id*.  The record does not support a finding that Defendant terminated

Plaintiff because of his sexual orientation.

Therefore, this Court finds that Plaintiff has failed to establish a protectable property interest

under Article II, § 18 of the New Mexico Constitution or the Fourteenth Amendment of the U.S.

Constitution.  Even if Plaintiff established a protectable property interest under the New Mexico

Constitution, Plaintiff has not explained, established, or provided case law as to how either legal

provision is enforceable against a private party.

In his Complaint and specifically in Count I, Plaintiff also alleges a violation of his equal

protection rights.  The Fourteenth Amendment's Equal Protection Clause states that no state shall "deny

to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. In

applying the several tests provided by the Tenth Circuit to determine if challenged conduct constitutes

state action, this Court finds Plaintiff's employment discrimination claims fail in establishing state

action.  Plaintiff does not contend nor does the evidence presented support a finding that a state or its agents denied him equal protection of the law under Article II, § 18 of the New Mexico Constitution. Plaintiff alleges that Defendant, a corporation, discriminated against him on the basis of his sexual orientation.  Specifically, Plaintiff alleges he was subjected to denied vacation requests and an unwarranted sexual harassment investigation because he is homosexual.  This Court finds the evidence presented does not support a finding that substantiates these claims.  Furthermore, Plaintiff does not argue nor does the record support a finding that the State of New Mexico, the Federal Government, or any other state took action that discriminated against him and denied him equal protection of the law.

Even if Plaintiff established state action, the record does not support a finding that he was subject to disparate treatment on the basis of his sexual orientation.[2]  Accordingly, this Court holds there is no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law.

### III.   Claims Under the New Mexico Human Rights Act and Title VII of the Civil Rights Act of 1964

Plaintiff alleges in Count II that Defendant violated the New Mexico Human Rights Act when it discriminated against him on the basis of his sexual orientation when it failed to properly investigate his discriminatory complaints, demotion, and termination because of his sexual orientation.  In Count III, Plaintiff alleges Defendant violated Title VII of the Civil Rights Act of 1964 when it disparaged Plaintiff on the basis of his sexual orientation.  Plaintiff further claims Defendant retaliated against him through unlawful termination.

The New Mexico Human Rights Act sets out the same standard to establish wrongful discrimination as Title VII.  *Walton v. New Mexico State Land Off.*, 113 F. Supp. 3d 1178, 1193 (D.N.M. 2015) citing, *Orr v. City of Albuquerque*, 417 F.3d at 1149 n. 5, *Lobato v. N.M. Env't Dep't*,

---

[2] Given Plaintiff's allegations and the structure of his briefs, this Court will address the additional discrimination and harassment allegations, which touch all counts, in Section III *et seq.*

733 F.3d 1283, 1296–97 (10th Cir.2013).  In considering a New Mexico Human Rights Act violation, the New Mexico Supreme Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.  411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).  For a Title VII sex discrimination claim, Plaintiff must present sufficient indirect evidence to establish a prima facie case of discrimination under the burden-shifting framework of *McDonnell Douglas Corp*.  Under that framework, Plaintiff must show that, "[1] [he] is a member of a protected class, [2] [he] suffered an adverse employment action, and [3] the challenged action occurred under circumstances giving rise to an inference of discrimination."  *Bennett v. Windstream Commc'ns, Inc*., 792 F.3d 1261, 1266 (10th Cir. 2015); *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1227 (10th Cir. 2000).  Once a plaintiff establishes the prima facie elements, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  *Turner v. Pub. Serv. Co. of Colorado,* 563 F.3d 1136, 1142 (10th Cir. 2009).  If the defendant does so, summary judgment is warranted unless the plaintiff shows that the defendant's proffered reason is pretextual.  *Id*., at 1143, *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

While sex is a protected class under Title VII, Plaintiff did not suffer any adverse employment actions.  42 U.S.C. § 2000e–2(a).  Adverse employment actions are, "significant change[s] in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007).  An adverse action must be more serious than a mere inconvenience or an alteration of job responsibilities.  *Id*.

As to the first adverse employment action allegation, his demotion, the record does not support a finding that this qualifies as an adverse employment action.  Plaintiff was demoted because he failed to

adequately follow proper protocols related to product cleanup from a spilled item.  UMF 21.  Plaintiff

failed to place the broken items in the claims cage as required – a breach of Walmart employee policy.

*Id*.  When the market manager became aware of this failure to follow protocol, Plaintiff was demoted.

UMF 22.  Plaintiff continued to work at Walmart for another two years following the demotion, and

Plaintiff did not discuss this change with Walmart supervisors.  UMF 25.  The evidence presented does

not support a finding that this demotion was in any way motivated by Plaintiff's sexual orientation.

Plaintiff contends that this demotion contributed and led to his resignation, but the record does not

support a finding that this demotion was unendurable or humiliating so as to compel resignation.

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 130 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004).

Plaintiff's resignation, as this Court will discuss shortly, occurred years after his demotion and as

Plaintiff described, he was not severely impacted by the demotion.  Ex. B at 89, 211.  Given Plaintiff's

continued employment at Walmart despite this demotion, this further indicates the demotion was not

unbearable for the purposes of determining whether it qualifies as an adverse employment action.  *See*

*Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 167 (1st Cir. 1991); *Jett v. Dallas Indep. Sch. Dist.*, 798

F.2d 748, 755-56 (5th Cir. 1986); *Hirschfeld v. New Mexico Corr. Dep't*, 916 F.2d 572, 580 (10th Cir.

1990).

    While demotion can certainly be an adverse employment action, Plaintiff has not established that

he engaged in a protected activity when demoted and is, therefore, lacking causality and temporal

proximity.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274-74 121 S. Ct. 1508, 149 L. Ed. 2d 509

(2001*)*, *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248 1253 (C.A.10 2001); *Richmond v. ONEOK, Inc.*,

120 F.3d 205, 209 (C.A.10 1997); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (C.A.7 1992).  The

evidence presented does not demonstrate causality or a nexus between Plaintiff's demotion and

engagement in a protected activity.

Next, Plaintiff alleges he resigned because Walmart constructively discharged him – Plaintiff argues that despite his resignation, Walmart's adverse employment actions, in effect, constructively discharged him because of his sexual orientation.  In establishing a constructive discharge, a plaintiff's burden is substantial. *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008) citing, *EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir.2007); *see also Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir.2002).  "[A]n employee cannot survive summary judgment merely by producing evidence showing that working conditions were difficult or unpleasant.  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).  Ultimately, "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice."  *Parker v. Bd. of Regents of Tulsa Jr. Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992) citing, *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167, 174 (4th Cir.1988); *see also Scharf v. Department of Air Force*, 710 F.2d 1572, 1574 (Fed.Cir.1983).  "Constructive discharge occurs "when 'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'"" *Garrett*, 305 F.3d at 1221 citing, *Sanchez v. Denver Public Schools*, 164 F.3d 527, 534 (10th Cir.1998) (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986)); *see also Bolden v. PRC, Inc.*, 43 F.3d 545, 552 (10th Cir.1994).  Factors to be considered in determining whether a plaintiff has been constructively discharged include, "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation."  *Id.* citing, *Stone*, 855 F.2d at 174; *see also Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.).

The record does not support a finding that Plaintiff was constructively discharged by Defendant. Plaintiff has not established that his working conditions at Walmart were "intolerable" or that "he had no other choice but to quit." *Fischer*, 525 F.3d at 980.  Plaintiff alleges several instances of homophobic conduct in the workplace resulted in his constructive discharge.  Plaintiff has admitted that in two of these alleged incidents, the comments were not directed at him.  UMF 49.  Plaintiff never confronted or reported any of the individuals that he claims made these derogatory remarks.  UMF 52.  Plaintiff does not allege that Defendant threatened or gave him an alternative to resignation, factors weighed by courts in determining whether a constructive discharge occurred.  *Parker*, 981 F.2d at 1162.  Nor does the record establish that if these incidents occurred, how they are connected to Plaintiff's termination, reinstatement, and subsequent resignation.

Defendant initially terminated Plaintiff because, as Plaintiff himself admitted, he struggled with attendance at work.  UMF 34.  In April 2021, Plaintiff had accumulated five points due to his tardiness and absences from work.  UMF 35.  Plaintiff had another subsequent absence for jury duty, for which Defendant terminated him.  UMFs 36 and 37.  Defendant immediately reinstated Plaintiff upon his furnishing proof of jury duty and received backpay.  UMFs 40 and 41.  While Plaintiff asserts that he resigned in April 2021 "due to duress" and his frustration from the wrongful termination, upon realizing its mistake, Defendant quickly and almost immediately rectified the situation and reinstated him.  Ex. B, at 100-101.  Plaintiff then continued working at Walmart until his amicable resignation.  UMF 44.  Plaintiff's resignation does not cite duress, intolerable working conditions, harassment, discrimination, etc., but rather, speaks highly of his experience there.  *Id*.

"If an employee resigns of [his] own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged."  *United States ex rel. Coffman v. City of Leavenworth, Kansas*, 303 F. Supp. 3d 1101 (D. Kan. 2018), aff'd, 770 F. App'x 417 (10th Cir.

2019) citing, *Jeffries v. State of Kan.*, 147 F.3d 1220, 1233 (10th Cir. 1998).  The evidence presented indicates that Plaintiff resigned of his own free will.  UMF 44.  Therefore, the evidence presented does not support a finding that Plaintiff was constructively discharged by Defendant.  Plaintiff's argument that he suffered an adverse employment action fails.

Lastly, Plaintiff has not established that the challenged actions occurred under circumstances that give rise to inferences of discrimination.  *Bennett,* 792 F.3d at 1266 ; *Kendrick*, 220 F.3d at 1227. Plaintiff contends that his demotion, termination, and subsequent resignation were motivated by discrimination against his sexual orientation.  Even if the actions taken by Defendant amount to adverse employment actions, the record does not support a finding that these actions suggest or give rise to an inference of sex discrimination or that he was treated differently than other employees because of his homosexuality.  Defendant demoted Plaintiff because of his failure to follow company protocols and policy regarding managerial responsibilities.  Defendant terminated Plaintiff because of his habitual tardiness and absences, which it then promptly reversed upon discovering Plaintiff's jury duty obligation.  Plaintiff then shortly thereafter resigned from Walmart amicably.

Plaintiff has asserted that he encountered homophobic slurs in the workplace, was denied vacation requests, and subject to a sexual harassment investigation because of his sexual orientation. However, Plaintiff has been unable to identify the source of each slur or that all insults were targeted at him.  UMFs 49 and 51.  Nor does this Court find that Plaintiff's vacation requests were denied or that he was subject to a sexual harassment investigation because of his sexual orientation.  Therefore, the challenged actions do not give rise to inferences of sex discrimination.  Plaintiff has failed to establish a prima facie case of sex discrimination.

However, if Plaintiff satisfied the prima facie elements, under the *McDonnell Douglas* framework, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the

adverse action(s).  *Turner*, 563 F.3d at 1142.  This Court finds Defendant had legitimate, nondiscriminatory reasons for its adverse employment actions.  As to Plaintiff's demotion, Defendant demoted Plaintiff because of his failure to comply with company protocols regarding spilled products, one of the primary responsibilities of supervisors or assistant managers.  Defendant has articulated that Plaintiff's failure to complete this responsibility was a legitimate, nondiscriminatory reason for the demotion.  As to Plaintiff's contention that Defendant wrongfully terminated him, Plaintiff routinely had tardiness and absence issues with Defendant during his employment.  When Plaintiff failed to report to work due to jury duty, he had reached Walmart's point threshold for termination.  Upon discovering Plaintiff's reason for his absence, Defendant promptly reversed its termination decision and reinstated Plaintiff.  Because Plaintiff reached the point threshold for termination given his absences, Defendant had a legitimate, nondiscriminatory reason for terminating him for violating company policy.

Therefore, summary judgment is warranted unless Plaintiff shows that Defendant's proffered reasons for its actions are pretextual.  *Id.*, at 1143; *Plotke*, 405 F.3d at 1099.  Plaintiff has not met that burden.  The record does not support a finding that Plaintiff was demoted, terminated, or resigned because of his sexual orientation.

While Plaintiff alleges that the several derogatory comments he heard should be considered evidence of discrimination, these alleged comments cannot be considered by this Court.  First and foremost, even if true, these comments are hearsay without an exception, and hearsay testimony that would not be admissible at trial is insufficient to defeat a summary judgment motion.  *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005), as modified on denial of reh'g (Dec. 20, 2005) citing, *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995).   Nor can these statements be considered non-hearsay admissions of a party opponent because despite being allegedly uttered by Defendant's agents, other Walmart employees, the speaker "must be involved in the decisionmaking

process affecting the employment action involved." *Id*. citing, *Aliotta v. Nat'l R.R. Passenger Corp.*,
315 F.3d 756, 762 (7th Cir.2003).  Plaintiff has not argued nor does the record support a finding that the
declarants were involved in any way in the decision-making process regarding the employment actions
at issue.  Furthermore, the record does not support a finding that these hearsay statements are connected
to or that there is a nexus between them and Plaintiff's termination, demotion, or resignation.  *Cone v.
Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) citing, *E.E.O.C. v. Clay Printing Co.*,
955 F.2d 936, 942 (4th Cir.1992); *see Figures v. Board of Pub. Utils.*, 967 F.2d 357, 360–61 (10th
Cir.1992).  Therefore, this Court finds Plaintiff has not established a pretext for Defendant's actions.

In sum, under Title VII, Plaintiff has not presented a prima facie case of sex discrimination under
the *McDonnell Douglas* framework.  Furthermore, Defendant has articulated legitimate,
nondiscriminatory reasons for its actions.  Plaintiff has not established that these reasons are pretextual.
There is no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law.

IV.    **Plaintiff's Hostile Work Environment Claim**

Plaintiff brings his hostile work environment claim via Article II, § 18 of the New Mexico
Constitution, the New Mexico Human Rights Act, the Fourteenth Amendment of the U.S. Constitution,
and 42 U.S.C. § 1981.[3]  Plaintiff asserts throughout his Complaint that Defendant created a hostile work
environment through homophobic comments and actions, his demotion, and harassment.  Doc. 1-2 at 10-
11.

For a Title VII hostile work environment claim, Plaintiff must present sufficient indirect
evidence to establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting

---

[3] Plaintiff asserts a hostile work environment claim throughout his Complaint but does not specifically assert it under Title
VII of the Civil Rights Act of 1964.  Defendant argues the hostile work environment claim under Title VII and Plaintiff in
reply (Doc. 59) later asserts that his hostile work environment claim is brought under the New Mexico Human Rights Act
and the Civil Rights Act.  Since such claims are normally asserted under Title VII and Plaintiff agreed, this Court will
analyze this claim under Title VII.

framework. *McDonnell Douglas Corp.*, 411 U.S. at 792; *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221-22 (10th Cir. 2015). To establish a prima facie hostile work environment claim and overcome summary judgment, "the plaintiff must show (1) he was discriminated against because of his sex, and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020). Hostile work environment claims are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Often, such hostile work environments are those, "permeated with 'discriminatory intimidation, ridicule, and insult." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1096 (10th Cir. 1999) quoting *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998). "Abusiveness" or "hostility" of a work environment must be determined through looking at the totality of the circumstances, which can include, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Plaintiff alleges instances of discrimination involving several homophobic comments in the workplace and these, in conjunction with Plaintiff's demotion, termination, and resignation point to a hostile work environment. Specifically, Plaintiff alleges several homophobic comments were made in the workplace, including that Plaintiff walks like a cat, that he "might break a nail" while disassembling a merchandise pallet, being called "Jerry the fairy," overhearing the words "faggot" and "butt pirate," other associates flicking their wrists at Plaintiff, and overhearing a coworker state, "if homosexuals got any more rights, then we might as well legalize pedophilia and bestiality." Ex. B at 128, 134, 136-37, 157, 203.

Defendant asserts Plaintiff has not put forth evidence of workplace intimidation, ridicule, or insult that is perceived as objectively intolerable, let alone evidence of a hostile work environment regarding his sexual orientation. Doc. 57 at 21.  Defendant further contends that two of the comments were general teasing between coworkers related to work responsibilities.  *Id*. at 22.  Plaintiff is unable to identify the declarant in several of these instances nor has he been able to establish that these comments were related to his sexual orientation and are therefore, insufficient to impose liability.  *Robinson v. Cavalry Portfolio Servs.*, LLC 365 Fed. Appx. 104, 120 (10th Cir. 2010).  Defendant admits that three of the incidents, the use of the words "faggot" and "butt pirate," associates flicking their wrists at Plaintiff, and the comment referring to pedophilia and bestiality, have homophobic connotations.  Nevertheless, these incidents occurred over a period of four years and were insufficiently severe or pervasive as to alter the conditions of employment.  *See Nettle v. Cent. Okla. Am. Indian Health Council, Inc.*, 334 Fed. Appx. 914, 922-23 (10th Cir. 2009).

The Court rejects Plaintiff's arguments.  Plaintiff contends, and Defendant does not dispute that he is a member of a protected class under Title VII.  Plaintiff asserts he was subjected to harassment based on his homosexuality given the several comments and incidents during his employment with Walmart.  However, this Court finds that the discrimination alleged is not sufficiently severe or pervasive such that it altered the terms or conditions of his employment.  Therefore, Plaintiff has not established a prima facie hostile work environment cause of action.

As to the comments Plaintiff alleges during his tenure at Walmart, while potentially epithets that engender offensive feelings, the record does not support a finding that Plaintiff suffered "a steady barrage of opprobrious [] comments" that a reasonable person would find hostile or abusive.  *Nettle*, 334 Fed.Appx. at 922 citing, *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)); *Ford v. West*, 222 F.3d 767, 777 (10th Cir.

24

2000) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).  In his Amended Complaint,

Plaintiff states he was asked if he was homosexual by other coworkers, was asked by Andrew Spicer in

April 2017 if he was "afraid to break a nail" while breaking down a merchandise pallet, was called

"Jerry the Fairy" in May 2019 by an unknown coworker, was told he walked like a cat in May 2019 by

Jazmin Zamaro and Antonette Morro, and was called "faggot" and "butt pirate" on a regular basis from

May 2019 until April 2021 by Andrew Spicer and Emilio (last name unknown).  Doc. 20.  In his

deposition testimony, Plaintiff further testified to co-workers flicking their wrists and comparing

homosexuality to pedophilia and bestiality.  Ex. B at 157, 203.  While this Court certainly does not

condone these comments, gestures, or incidents, the record does not support a finding that these

incidents formed a "steady barrage" required for a hostile work environment claim.  *Chavez*, 397 F.3d at

832; *Nettle*, 334 Fed.Appx. at 922.  Plaintiff has not established that "a rational jury could find that the

workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Crystal v. C.P.C.*, No.

22-CV-060-SWS, 2023 WL 7221037 (D. Wyo. July 13, 2023) citing, *Sanderson*, 976 F.3d at 1176.

In determining the existence of a sufficiently severe or pervasive workplace, courts weigh "the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating,

or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  *Schlegel v. Finney Cnty., Kansas, Bd. of Commissioners*, No. 21-1288-JAR-KGG, 2023

WL 2428900 (D. Kan. Mar. 9, 2023) citing, *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir.

1998) (quoting *Harris*, 510 U.S. at 23).  In weighing the totality of the circumstances, this Court finds

the comments and incidents in question to be offensive utterances that do not appear to have interfered

with Plaintiff's work performance.

In *Schlegel*, the court denied Defendant's motion for summary judgment in a situation where the

plaintiff, a lesbian, was harassed at least monthly over a period of ten years and became so distraught

before her termination, that she sought psychological counseling.  *Id*.  In *Kilpatrick v. HCA Human Resources, LLC*, the Sixth Circuit affirmed a motion for summary judgment against the plaintiff.  There, the plaintiff, homosexual, received pink nail polish, pink sunglasses, bath bombs, and hostile Bible verses at his workplace, which the Court found insufficiently severe or pervasive.  *Kilpatrick v. HCA Hum. Res., LLC*, No. 22-5307, 2023 WL 1961223 (6th Cir. Feb. 13, 2023).  Similarly, in *Small v. New York City Department of Education*, "an incident where the plaintiff was publicly questioned about his disability by his supervisor did not constitute a hostile work environment even where coupled with four incidents where his supervisor yelled at or was aggressive towards him and an incident where the plaintiff believed his supervisor referred to him as a "faggot" in another language."  *Small v. New York City Dep't of Educ.*, 650 F. Supp. 3d 89, 101 (S.D.N.Y. 2023).  Rather, severe and pervasive conduct for the purposes of a hostile work environment claim requires much more.  *See, e.g., Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (holding that constant lewd comments, winking, blowing kisses, touching and grabbing, and requests for sex collectively were sufficient for trial on hostile work environment claim); *Smith v. Rock-Tenn Servs.*, 813 F.3d 298, 310–11 (6th Cir. 2016) (plaintiff experienced a slap and later a painful grab on the buttocks, grabbing of the hips and "hunching," *i.e.*, simulation of sex).  However, if employees create a hostile work environment, an employer can be held liable if it "knew or should have known about the [employee's] conduct but failed to stop it."  *Bertsch v. Overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012), abrogated on other grounds by *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018); *Throupe*, 988 F.3d at 1251.

Here, despite these offense comments, Plaintiff continued his employment with Defendant until 2021.  Plaintiff admitted that several of these derogatory comments were not directed at him.  Ex. B at 204.  Plaintiff did not confront the co-workers that allegedly made these comments, nor did he report these comments to management or the EEOC.  Ex. B at 123.  Plaintiff concluded his employment with

Defendant when he resigned amicably, referring to his time there as "memorable."  UMF 44.  Since

Plaintiff did not report these purported hostile work environment conditions to management or

supervisors, he has not established that Defendant knew or should have known about the conduct and

failed to stop it.  While possibly homophobic and inappropriate, these comments Plaintiff alleges fall

short of the hostile work environment threshold.

Additionally, while the Tenth Circuit has not explicitly addressed this question, a majority of

circuits have held that a defendant's discrete acts of demotion and termination and a plaintiff's

resignation cannot form part of a hostile work environment claim.  *Nicewonder v. Ferguson Enterprises,*

*LLC*, No. 22-CV-01062-CMA-KLM, 2023 WL 244830 (D. Colo. Jan. 18, 2023), report and

recommendation adopted, No. 22-CV-01062-CMA-KLM, 2023 WL 1466828 (D. Colo. Feb. 2, 2023)

citing, *Bobelu-Boone v. Wilkie*, 526 F. Supp. 3d 971, 981-82 (2021), *Moses v. Dassault Falcon Jet-*

*Wilmington Corp.*, 894 F.3d 911, 920 (8th Cir. 2018), *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 115 (2002); *see also Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 223 (4th Cir. 2016);

*Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).  Therefore, this Court finds that Plaintiff has

failed to establish a prima facie hostile work environment claim.

As discussed in Section III, Plaintiff did not suffer adverse employment actions that suggest or

give rise to an inference of discrimination.  *Bennett*, 792 F.3d at 1266; *Kendrick*, 220 F.3d at 1227.

Plaintiff's demotion occurred because of his noncompliance with workplace policies.  Plaintiff's

termination occurred because of his habitual tardiness and absences from work, which Defendant

promptly reversed upon discovering his jury duty obligation.  Lastly, this Court has found that Plaintiff's

resignation was amicable and not the result of a constructive discharge.  The evidence presented does

not support a finding that the homophobic incidents Plaintiff alleges are in any way connected to these

employment actions.  Even if Plaintiff established a prima facie hostile work environment claim,

Defendant has articulated and the record supports a finding that Walmart had legitimate, nondiscriminatory reasons for its adverse actions.  Furthermore, Plaintiff has not established that Defendant's proffered reasons for these adverse actions were pretextual in any way.

Therefore, this Court holds there is no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law.

### V.      Plaintiff's Retaliation Claim

Plaintiff alleges retaliation against Defendant but does not specify under which law he is bringing this claim in his Complaint.  Plaintiff later does not dispute that the retaliation claim is brought under Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act.  Doc. 59 at 13. Therefore, this Court will analyze Plaintiff's retaliation claim under both laws.[4]

For a prima facie case of retaliation, a plaintiff must show, "(1) [he] engaged in protected opposition to discrimination; (2) [the employer] took adverse employment action against [him]; and (3) there exists a causal connection between the protected activity and the adverse action."  *Goodson v. DeJoy*, No. 22-1338, 2023 WL 4782947 (10th Cir. July 27, 2023) citing *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004).  In establishing this causal connection, a plaintiff "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"  *Walton v. New Mexico State Land Off.*, 113 F. Supp. 3d 1178, 1190 (D.N.M. 2015) citing, *Proctor v. United Parcel Serv.*, 502 F.3d at 1208 (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir.2006).  Generally, if temporal proximity between a protected activity and an adverse action are not close in time, a plaintiff must offer additional evidence in order to establish causation.  *Id.* citing, *Procter*, 502 F.3d at 1209.  "Unless there is very close temporal proximity between

---

[4] "The NMHRA sets out the same standard for establishing wrongful discrimination as Title VII.  *See Orr*, 417 F.3d at 1149 n. 5; *Lobato*, 733 F.3d at 1296-97…When considering a violation of the NMHRA the Supreme Court of New Mexico applies the framework that the Supreme Court of the United States established in *McDonnell Douglas Corp*."  *Walton*, 113 F.Supp.3d at 1193.  Therefore, this Court will follow the Title VII analysis as to Plaintiff's retaliation claim.

the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish

causation."[5] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001).  "[T]o qualify as

protected opposition the employee must convey to the employer his or her concern that the employer has

engaged in a practice made unlawful by [anti-discrimination statutes]." *Hinds v. Sprint/United Mgmt.*

*Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).  Courts have interpreted "adverse action" to be action that "a

reasonable employee would have found materially adverse" or action that "might have 'dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Mickelson v. New York Life*

*Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir.2006); *Burlington Northern & Santa Fe Ry. v. White*, 548U.S.

53, 126 S.Ct. 2405, 2415 165 L.Ed.2d 345 (2006).  Once a prima facie case is established under the

*McDonnell* framework, "[this] then shifts the burden to the employer to produce a legitimate,

nondiscriminatory justification for taking the disputed employment action." *Stover*, 382 F.3d at 1070.

Here, Plaintiff has failed to establish a prima facie case of retaliation.  First, Plaintiff has not

established that he engaged in protected opposition to discrimination.  "Protected activity for the

purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII proceeding or

(2) opposing discrimination made unlawful by Title VII." *Boese v. Fort Hays State Univ.*, 814 F. Supp.

2d 1138, 1146 (D. Kan. 2011), aff'd, 462 F. App'x 797 (10th Cir. 2012) citing, *Cole v. Ruidoso Mun.*

*Sch.*, 43 F.3d 1373, 1381 (10th Cir.1994).  During his four-year employment with Walmart, Plaintiff did

not complain to supervisors or management about the alleged discriminatory conduct he experienced

there. Ex. B at 127, 168-69.  Nor did Plaintiff file a Title VII complaint with the EEOC.  Rather,

Plaintiff only raised his discrimination claims after he resigned.

While Plaintiff alleges several adverse employment actions occurred, including demotion,

termination, and his own subsequent resignation, as this Court previously concluded, the record does not

---

[5] The Tenth Circuit has previously held that a three-month period is insufficient to establish causation.  *Anderson v. Coors*
*Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999).

support this.  Plaintiff's demotion occurred because of his failure to follow company policy.  Plaintiff's temporary termination occurred because of his habitual tardiness, and Plaintiff was immediately reinstated.  Lastly, Plaintiff's resignation was not constructive and occurred freely and voluntarily.  Therefore, this Court finds Plaintiff has not established that he suffered from an adverse employment action under Title VII.

As to the third prima facie element of a retaliation claim, causality, Plaintiff has not established a causal connection between any protected activity and an adverse action.  Even if he engaged in a protected activity, Plaintiff himself has admitted his demotion occurred because of his failure to follow company policy.  Ex. B at 91-93.  The other alleged adverse actions, Plaintiff's termination and resignation, occurred in some cases years after the alleged discriminatory conduct that Plaintiff did not report.  As such, the record does not support a finding of causality between a protected activity and the adverse action(s).  Therefore, Plaintiff has failed to establish a prima facie case of retaliation.

If Plaintiff satisfied the prima facie elements, under the *McDonnell Douglas* framework, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse actions.  *Turner*, 563 F.3d at 1142.  As this Court previously discussed, Defendant has articulated legitimate, nondiscriminatory reasons for its actions.  Therefore, summary judgment is warranted unless Plaintiff shows that Defendant's proffered reason(s) for its actions is pretextual.  *Id*., at 1143; *Plotke,* 405 F.3d at 1099.  Plaintiff has not met that burden.  The evidence presented does not support a finding that Defendant's proffered reasons are pretextual or that Plaintiff was demoted, terminated, or resigned because of his sexual orientation.  As such, this Court holds as to Plaintiff's retaliation claim there is no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court grants summary judgment on Plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 57) is

hereby **GRANTED** as described above.  Plaintiff's complaint is dismissed with prejudice as to all counts.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE